Filed 6/27/13  P. v. Wigiert CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>MATTHEW ALAN WIGIERT,<br><br>        Defendant and Appellant. | C071286<br><br>(Super. Ct. No. P08CRF0255) |

This case involves the interplay between the Sex Offender Registration Act (SORA) and the Criminal Justice Realignment Act of 2011 (Realignment Act).[1]

At all relevant times, defendant Matthew Alan Wigiert has been subject to lifetime sexual offender registration arising out of a *prior* case, a fact which no one--not the People, not defense counsel, and not the probation department--timely conveyed to the

_____

[1]  SORA is found at Penal Code section 290, et seq.  All further section references are to the Penal Code.

The Realignment Act "'shifted responsibility for housing and supervising certain felons from the state to the individual counties'" but excludes SORA registrants from its ambit.  (*People v Torres* (Feb. 15, 2013, F063840) ___ Cal.App.4th ___, ___ [p. 5]; see *People v. Griffis* (2013) 212 Cal.App.4th 956, 961-962 (*Griffis*); § 1170, subd. (h)(3)(C).)

1

trial court in the *current* case. When sentencing defendant in the current case, the trial court ordered defendant to register as a sex offender for (and only for) five years, as a condition of probation. The trial court later revoked probation and sent defendant to prison.

Defendant claims he should not have been sentenced to state prison because he was not excluded from the Realignment Act. We conclude the record shows defendant had a prior lifetime duty to register under SORA. His status as a SORA registrant was not changed by the temporally-limited registration order made as a condition of probation earlier in this case. Contrary to defendant's view, *all* SORA registrants are excluded from the Realignment Act, not merely *new* SORA registrants. (See § 1170, subd. (h)(3)(C).) Because the trial court reached the same conclusions in sentencing defendant to state prison, we shall affirm.

## BACKGROUND

In this case, defendant was charged with seven sex offenses. On August 13, 2008, pursuant to a plea bargain, he pled no contest to two counts of unlawful sexual intercourse with a minor more than three years younger than himself, reflecting two separate victims. (§ 261.5, subds. (a), (c).) The agreed-upon sentence was one year in jail, and registration as a sex offender during the period of probation. Five other counts were trailed.

SORA registration is not mandatory for the crime of unlawful sexual intercourse, but a trial court has discretion to impose a registration requirement for *any* offense-- including unlawful sexual intercourse--if the offense is motivated by "sexual compulsion or for purposes of sexual gratification"--and the trial court states on the record "the reasons for its findings and the reasons for requiring registration." (§ 290.006; see *People v. Picklesimer* (2010) 48 Cal.4th 330, 345; *People v. Hofsheier* (2006) 37 Cal.4th 1185, 1197-1198 [discussing predecessor statute].) Such a person "shall" register

2

"pursuant to" SORA. (§ 290.006.) The reporter's transcript of the 2008 change-of-plea hearing is not in the record, so it is unclear why the trial court ordered the temporally-limited sex registration condition of probation in this case.[2]

On November 19, 2008, a different trial court stayed imposition of sentence and placed defendant on five years of probation, with a condition that he register as a sex offender for the period of probation, which the trial court described as "a difference from the normal law and order. This will be for a five year reporting term only from this date." The trailing counts were dismissed pursuant to the plea bargain.

In a letter dated November 30, 2009, the probation department notified the court that defendant had been assessed with "the State Authorized Risk Assessment Tool for Sex Offenders (SARATSO)" and scored at "high" risk of reoffense. Normally, that would require continuous electronic monitoring while on probation unless the trial court found such monitoring was unnecessary in a particular case. (See § 1202.8, subd. (b).)

_____

[2] As the People argued in the trial court, this may have been an unauthorized limitation. Registration is for life. (Pen. Code, § 290, subd. (b).) Because of the lifetime registration requirement, the court generally has no authority to require registration only for the period of probation. Although no published decision has yet addressed the point, if the court is imposing registration under the discretionary provisions of section 290.006, it might be argued the court also has the discretion to determine the length of the registration requirement. Nothing in the section 290 statutory scheme, however, indicates registration, whether mandatory or discretionary, is for anything less than life without a certificate of rehabilitation or pardon." (Couzens, Prickett & Bigelow, Sentencing California Crimes (Barrister Press, Aug. 2011) Sex Crimes, p. 270 (Couzens, Prickett & Bigelow); see *People v. Zaidi* (2007) 147 Cal.App.4th 1470, 1481-1490 [allowing a defendant to withdraw his plea because he thought SORA registration was merely for length of probation, and he was not advised it was a lifetime duty, pointing out (at p. 1484) that "Registration is not for a finite period, like a jail incarceration or probation"].) We need not resolve that issue in this appeal. However, we note that the trial court's probation condition was not wholly unprecedented. (See *People v. King* (2007) 151 Cal.App.4th 1304, 1306 (*King*).)

The probation department recommended against monitoring by the *probation* department because, "As a result of his status as a registered sex offender the defendant is subject to the continuous electronic monitoring as a condition of parole. Therefore, it is respectfully recommended that the defendant not be subject to continuous electronic monitoring by the probation officer at this time. Prior to his discharge from parole the probation officer will reevaluate the appropriateness of subjecting the defendant to continuous electronic monitoring and make the appropriate recommendation to the court." Although this information signaled clearly that the registration probation condition imposed in the *current* case was partly duplicative of a lifetime registration requirement from a *prior* case, the only result of this letter was that the trial court ordered defendant "absolved from continuous electronic monitoring by the probation officer until he is discharged from parole."

On November 21, 2011, the People filed a petition alleging defendant violated probation (VOP), and probation was summarily revoked. A VOP report alleged defendant removed his ankle monitor and absconded to Nevada with his mother's ATM card. The report stated defendant had recently been discharged from parole "following a lengthy criminal history *including multiple convictions for sex offenses*, burglary, and narcotics use[,]" (emphasis added) and recommended a two-year sentence on each count, to be served consecutively, for a four-year prison term.

Defendant was later charged with two drug offenses, and a second VOP was filed. On February 10, 2012, he pled no contest to one misdemeanor drug charge, the other was dismissed, and he admitted violating probation. Imposition of sentence in the drug case was suspended and probation was reinstated.

On February 16, 2012, a third VOP was filed, alleging defendant did not promptly contact the probation officer and did not report as directed for installation of a new monitoring device. An attached probation report noted defendant was a "high risk" sex offender who "had cut off" his monitoring device and fled the state before, and

4

recommended the trial court impose and stay a two-year sentence and order him to serve 120 days in jail, with no credit for time served.[3]

On March 5, 2012, defendant admitted the latest VOP allegations. The trial court declined to reinstate probation and sentenced defendant to the upper term of three years on one of the sex counts, with a concurrent midterm on the other, but "split the sentence" so that defendant would serve two years in county jail, and the trial court stayed the remaining year "so the Defendant will be released on mandatory supervision." The trial court was "somewhat troubl[ed]" by the prior limited sex registration order, stating "it's not really appropriate on a state prison sentence. But I'm sure probation will have other terms they'll be requesting." [4]

On March 7, 2012, the parties were back in court to discuss a claimed error in the computation of defendant's custody credits. At that hearing, the People for the first time advised the court that, because defendant was a registered sex offender (apparently still referencing only the current case), he was ineligible for sentencing under the Realignment Act, and asked the court to correct what they characterized as an unauthorized "split" sentence, seeking a state prison sentence instead. The trial court recalled the sentence (see § 1170, subd. (d)) and sought briefing from the parties. (See fn. 5, *post*.)

_____

[3] The record sheds no light on the question of why a *two-year stayed* state prison sentence was recommended at this point, when a *four-year unstayed* state prison sentence was recommended before defendant twice more violated probation.

[4] The "split-sentence" is a creature of the Realignment Act: "When a court sentences a defendant to county jail under the Realignment Act, the court can suspend execution of a concluding portion of the defendant's sentence, during which time the defendant is given supervised release from custody, akin to probation. (§ 1170, subd. (h)(5) (B).)" (*Griffis*, *supra*, 212 Cal.App.4th at p. 963, fn. 2.)

Defendant filed his brief on March 15, 2012, asserting his registration duty arose from only the probation condition in the current case. The SORA exception provided by the Realignment Act, requiring defendants to serve sentences in state prison rather than county jail, applies to any defendant who "is required to register as a sex offender *pursuant to* Chapter 5.5 (commencing with Section 290) [.]" (§ 1170, subd. (h)(3)(C), emphasis added.) Defendant's argument was that he was not required to register "pursuant to" SORA, but pursuant to a probation condition.

The People then lodged with the trial court a letter from the California Department of Justice (DOJ), authenticating certified copies of defendant's "California Sex and Arson Registry." In part, it shows that defendant was previously convicted of misdemeanor sexual battery (§ 243.4, subd. (e)(1)). As a matter of law, such a conviction results in mandatory lifetime SORA registration. (§ 290, subds. (b) & (c).)

The People's brief argued the split sentence reflected an abuse of discretion because the trial court (and, inferentially, everyone else involved) had until that point been "unaware the defendant was already a lifetime sex offender registrant pursuant to his valid plea and waiver agreement in case P06CRF0388 [the prior sexual battery case]. Thus, the validity of the court's order requiring him to register in case P08CRF0255 [i.e., as a condition of probation in the *current* case] is irrelevant and the issue is moot." Attached to the brief was a copy of the plea form in the prior case, showing defendant resolved four then-pending criminal cases by pleading no contest to receiving stolen property (P07CRF0011), second-degree burglary (P06CFR0598), and misdemeanor sexual battery (P06CRF0388), with the fourth case (P06CRF1084) to be dismissed. Defendant had initialed a line that read: "I understand that I will be required to register as a sex offender pursuant to Penal Code § 290."

When the current case came on for a hearing on March 21, 2012, the trial court lamented its "sordid history[,]" but concluded that it had not lost jurisdiction to change the sentence because it retained the power to recall the sentence within 120 days,

6

pursuant to section 1170, subdivision (d).[5]  The trial court continued the matter for the parties to brief the newly-discovered issue regarding defendant's registration status arising from the prior case.  Then, for the first time, the People informed the court that there was *a second* prior case, P05CRM1922, in which defendant allegedly was convicted of unlawful sexual intercourse and ordered to register as a sex offender.

The subsequent defense brief did not address the issue of the registration orders in the two prior cases, except to state counsel had not received all relevant transcripts.  The People's brief included as exhibits a March 5, 2007 change-of-plea form in the prior sexual battery case (P06CRF0388), and a February 24, 2006 minute order in the prior unlawful sexual intercourse case (P05CRM1922), reflecting that defendant was ordered to register as a sex offender "pursuant to" section 290, *in each case*.  The same copy of defendant's Sex and Arson Registry report that had been submitted before was attached to the People's brief.

On April 11, 2012, the trial court took judicial notice of the two prior "cases" and stated "I have considered those files."  The trial court tentatively concluded the prior cases mooted the pending sentencing issues.  Defense counsel argued in a part that "increased penalties and additional obligations" had not been pled or proven, a point reiterated in a later motion.[6]  The People argued the original split sentence was unauthorized because defendant was a SORA registrant.

_____

[5]  The trial court relied on a leading bench guide, which concludes a trial court's power to recall a state prison commitment (§ 1170, subd. (d)) includes the power to recall a prison sentence ordered to be served locally.  (Couzens & Bigelow, Felony Sentencing After Realignment (Feb. 2013) Additional Issues, pp. 26-27 (Couzens & Bigelow).)  Defendant disagrees with this view, but concedes the trial court had the power to "correct" its sentence if it were not legally authorized.

[6]  As defendant points out, the trial court did not clearly identify the documents judicially noticed.  The trial court may have meant the entire case files, or merely the documents from those files attached as exhibits to the People's brief.  We need not resolve this point.

7

On April 11, 2012, the trial court declined to reinstate probation and imposed a state prison sentence consisting of the upper term of three years on count I, with a concurrent lower-term sentence on count II.

Defendant timely filed this appeal.

## DISCUSSION

### I

*Defendant is Excluded from the Realignment Act*

Defendant contends no evidence shows he was subject to a lifetime registration requirement resulting from any prior case, and in any event he remained eligible for a county jail commitment under the Realignment Act. We disagree.

First, we have previously held there is no need to plead and prove a prior conviction in order to disqualify a defendant from the Realignment Act, and in doing so made it clear our holding applied to "a prior conviction *or other factor disqualifying a defendant from a jail sentence under the Realignment Act*[.]" (*Griffis*, *supra*, 212 Cal.App.4th at pp. 963-964, emphasis added.) We adhere to that view in this case. Therefore, there was no need for the People to formally plead and prove his exclusion from the Realignment Act.

The trial court took judicial notice of records in two prior cases, and found defendant was subject to lifetime SORA registration. (See fn. 6, *ante*.) The documents

---

Defense counsel did not ask the trial court to clarify what it was considering or to lodge that material in the record. Instead, counsel merely objected to the trial court's considering *anything* outside the current case file, arguing there was an issue "of what must be pled and proven[.]" On appeal, defendant fails to present any authority preventing a trial court from taking judicial notice of its own files, or documents from its files, to determine a defendant's prior criminal record, and therefore has forfeited any such claim. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408.) And in any event, such a claim would fail. (See *People v. Woodell* (1998) 17 Cal.4th 448, 455-456; 1 Witkin, Cal. Evidence (4th ed. 2000) Judicial Notice, § 23, pp. 117-118.) There was simply no *factual* dispute that defendant was previously convicted of sexual battery. (§ 243.4, subd. (e)(1).)

8

from those cases, and the authenticated DOJ documents, confirm defendant was a lifetime sex registrant, independent of the probation condition imposed in this case. If trial counsel thought those documents were somehow inadequate, the remedy was to challenge them or present other evidence that belied them. This was not done. The documents presented to the trial court were sufficient to show defendant had been convicted of sexual battery, for which SORA registration is compelled, and that he had, in fact, registered.

Defendant in part contends those documents do not show defendant was ordered to register *for life*. We disagree. Even if SORA registration is not *always* for life--barring a certificate of rehabilitation or pardon (see fn. 2, *ante*)--the order imposing registration "pursuant to" SORA in the sexual battery case was a lifetime order: "Every person described in subdivision (c) [which includes convictions for sexual battery], *for the rest of his or her life*," is subject to SORA. (§ 290, subd. (b), emphasis added.)

Assuming the limited registration order was authorized (but see fn. 2, *ante*), we disagree with defendant that there was "no point in his being ordered to register for a finite period of time" as a condition of probation in the present case. Although that order may have been made without knowledge of defendant's preexisting SORA registration duties, "A trial court has broad discretion to impose conditions of probation that will foster rehabilitation of the defendant and protect the public and the victim." (*King*, *supra*, 151 Cal.App.4th at p. 1309.) It would not be irrational to impose a SORA registration order as a condition of probation, even for a person, like defendant, who is also required to register because of a prior conviction, because doing so would allow flexibility in dealing with subsequent SORA violations: They might result in new criminal charges or could be dealt with by means of a VOP alleging noncompliance with the probation condition, depending on the severity of the violation and other relevant factors. (Cf. *King*, *supra*, 151 Cal.App.4th at pp. 1307-1309, & fn. 6 [where defendant's duty to register arose solely from a condition of probation, and trial court had not made

9

the discretionary findings authorizing SORA registration for the offense of unlawful sexual intercourse, defendant could not be convicted of violating SORA, but could be subject to revocation of probation].) But in any event we reject defendant's apparent view that the earlier probation order in this case has any relevance to his preexisting SORA registration status.

Defendant argues the documents in the record merely show defendant *would be ordered* to register, not that he actually *did* register. But the authenticated DOJ documents show that he *did*, in fact, register. Further, we presume official duties are carried out and the relevant officials ensured that he did register under SORA. As stated in an analogous case, "official government records clearly describing a prior conviction presumptively establish that the conviction in fact occurred, assuming those records meet the threshold requirements of admissibility. (See Evid. Code, § 664 ['It is presumed that official duty has been regularly performed'].) Some evidence must rebut this presumption before the authenticity, accuracy, or sufficiency of the prior conviction records can be called into question." (*People v. Epps* (2001) 25 Cal.4th 19, 27.) Nothing in the record calls into question defendant's status as a SORA registrant.

Finally, we reject defendant's claim that only those sex registrants whose SORA duties arise from a *current* case are excluded from the Realignment Act. The portion of the statute relevant to his argument is as follows:

> "Notwithstanding paragraphs (1) and (2), where the defendant (A) has a prior or current felony conviction for a serious felony described in subdivision (c) of Section 1192.7 or a prior or current conviction for a violent felony described in subdivision (c) of Section 667.5, (B) has a prior felony conviction in another jurisdiction for an offense that has all the elements of a serious felony described in subdivision (c) of Section 1192.7 or a violent felony described in subdivision (c) of Section 667.5, (C) is required to register as a sex offender pursuant to Chapter 5.5 (commencing with Section 290) of Title 9 of Part 1, or (D) is convicted of a crime and as part of the sentence an enhancement pursuant to Section 186.11 is imposed, an executed sentence for a felony punishable pursuant to this subdivision shall be served in state prison." (§ 1170, subd. (h)(3).)

10

Defendant's argument hinges on the use of "prior or current" and "prior" convictions in other exclusions from the Realignment Act. He reasons that because "prior" does not appear in the part of the statute pertaining to SORA registrants, only *current-case* SORA registrants are excluded. We disagree.

The other provisions exclude persons who have "a prior or current" serious or violent felony or a "prior" foreign conviction that would be serious or violent if committed in California. The SORA exclusion refers to a person's *status*, which might arise from a current or prior conviction in California or elsewhere, provided that such conviction triggers the SORA definitions. (See §§ 290, subds. (b) & (c), 290.005.) *All* such persons are "required to register as a sex offender pursuant to" SORA. (§ 1170, subd. (h)(3)(C).) Had the Legislature wanted to limit the exclusion to persons ordered to comply with SORA in current cases but not prior registrants--assuming there was some rational reason to do so--it would not have phrased the exclusion the way it did, to cover any person who "is required to register as a sex offender pursuant to" SORA. (§ 1170, subd. (h)(3)(C).) We agree with the view of other learned jurists that, "The plain language of the statute suggests that anyone required to register, whether or not for the current offense, will be excluded from sentencing under section 1170(h)." (Couzens & Bigelow, *supra*, p. 24; see also Couzens, Prickett & Bigelow, *supra*, p. 130.)[7]

II

*The Abstract of Judgment Must be Corrected*

An abstract of judgment must fully and accurately capture all components of a defendant's sentence. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185; *People v. Zackery* (2007) 147 Cal.App.4th 380, 385-389.) The sentencing triad for unlawful sexual

_____

[7] Contrary to defendant's view, his reading of the statute does not plausibly account for its language and therefore he has not tendered an ambiguity so as to trigger the "rule of lenity." (See *People v. Cornett* (2012) 53 Cal.4th 1261, 1271 [rule of lenity not applied unless two interpretations stand in relative equipoise].)

intercourse with a victim more than three years younger than the defendant is the default triad of 16 months, two years, or three years. (See §§ 18, 261.5, subd. (c).)

As the People note, the trial court imposed the lower term of 16 months in state prison for count II, to be served concurrently to the upper-term sentence of three years for count I. However, the abstract of judgment incorrectly states the concurrent sentence on count two is one year and six months (that is, 18 months), instead of one year and four months (that is, 16 months).

We will direct the trial court to prepare a corrected abstract of judgment.

## DISPOSITION

The judgment is affirmed. The trial court is directed to prepare a corrected abstract of judgment and forward a certified copy thereof to the Department of Corrections and Rehabilitation.

DUARTE , J.

We concur:

BLEASE , Acting P. J.

MURRAY , J.

12