[No. F061552. Fifth Dist. Jan. 27, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
PATRICK DISNEY MILLER, Defendant and Appellant.

## COUNSEL

Cron, Israels and Stark, Philip D. Israels and Sam J. Israels for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and J. Robert Jibson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FRANSON, J.**—Appellant Patrick Disney Miller appeals the trial court's denial of his motion to vacate his plea and modify his conviction from a felony to a misdemeanor. Miller was charged in an August 2004 complaint with unlawful possession of diazepam (Valium), as a felony under Health and Safety Code section 11350, subdivision (a) (section 11350(a)),[1] driving under the influence (DUI), as well as other offenses. Diazepam possession is at most a misdemeanor pursuant to section 11375. In early 2005, appellant pled no contest to the diazepam possession charge as a felony, as well as the misdemeanor DUI, and received three years of formal probation, which he successfully completed in early 2009. He raised no objection to his plea and conviction until April 2010, when he collaterally attacked his plea and

---

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

conviction by filing the motion at issue. Although we agree there was error in charging and accepting the plea to diazepam possession as a felony, for reasons of public policy, we conclude appellant is estopped from vacating his plea and modifying his conviction by his consent to the plea agreement. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

According to police reports of the incident, in the late morning of July 14, 2004, appellant was caught driving 121 miles per hour on Interstate 5 north of El Dorado Avenue, in western Fresno County. He admitted to police he had taken Valium and Vicodin (hydrocodone bitartrate) pills earlier in the morning and the police also detected the odor of burnt marijuana, although appellant denied smoking any marijuana. Police administered several field sobriety tests and determined appellant was under the influence and unable to safely operate his car. Police then placed appellant under arrest. Appellant then admitted he had smoked marijuana in addition to taking the pills.

Police searched appellant's car and found 102 pills of Valium, 169 pills of Vicodin, over an ounce of marijuana, and other drug paraphernalia. Toxicology reports of a blood sample taken approximately three hours after getting pulled over indicated appellant had Valium and marijuana in his system that morning. When asked about the pills by the police, appellant told them he bought them in Tijuana, Mexico, and smuggled them across the border. He admitted he had no prescription for the pills and only used a couple pills a day.

A felony complaint was filed in August 2004, charging appellant with five counts: count I was "POSSESSION OF A CONTROLLED SUBSTANCE, in violation of HEALTH AND SAFETY CODE SECTION 11350(a), a felony, was committed by Patrick Miller, who did unlawfully have in his/her possession a controlled substance, to wit, Diazepam (Valium)." The other counts were felony possession of hydrocodone bitartrate (Vicodin), in violation of section 11350(a) (count 2); misdemeanor driving under the influence of alcohol or drugs, in violation of Vehicle Code section 23152, subdivision (a), with a further allegation that appellant was driving "more than 30 miles per hour over the speed limit on a freeway or more than 20 miles per hour over the speed limit on any other street or highway" (count 3); misdemeanor being under the influence of a controlled substance, in violation of section 11550, subdivision (a) (count 4); and misdemeanor possession of more than 28.5 grams of marijuana, in violation of section 11357, subdivision (c) (count 5).

In February 2005, appellant entered into a plea agreement where he would plead no contest to "Count 1 H&S 11350(a)" and count 3 (DUI). The remaining counts were dismissed. The terms of the plea agreement were set forth on a "FELONY ADVISEMENT, WAIVER OF RIGHTS, AND PLEA FORM." As outlined on the plea form, the maximum sentence he could receive as a result of his plea was three years two months in prison, and up to 48 months' parole. The plea form also indicated another possible consequence of his plea may include registration, ostensibly as a narcotics offender. Appellant's counsel reviewed the terms of the plea agreement with him and concurred in the pleas. At the end of the plea form was the court order, signed by the trial court, which stated in pertinent part: "The Court finds that the defendant's plea(s) and admission(s) are freely and voluntarily made with an understanding of the nature and consequences thereof, and that there is a factual basis for the plea(s)."

The probation department recommended formal probation. Appellant was sentenced in April 2005. Defense counsel suggested appellant be permitted to attend a specific comprehensive drug treatment program in Tarzana, California, in lieu of any time in custody, be ordered to see a therapist, and be placed on formal probation for three years. The trial court agreed, found appellant a suitable candidate for probation, suspended imposition of judgment for three years, placed appellant on formal probation for the duration, and also ordered he perform 250 hours of community service in lieu of serving 29 days in custody. Prior to sentencing, appellant was advised of his duty to register as a narcotics offender under section 11590, use of the conviction in any later prosecutions, disclosure of the conviction in any job application for public employment or licensing, and prohibition against possessing any firearms. Probation supervision was transferred to Los Angeles County, where appellant resided.

In 2006, appellant moved to modify his probation conditions to be less restrictive and noted he suffered from a blood clot in his leg and cervical spine disease. The court eliminated the community service hours requirement because of his medical conditions.

After successfully completing his probation term in 2008, appellant petitioned the court to set aside his plea and dismiss the complaint pursuant to Penal Code section 1203.4, subdivision (a). Included with the petition was acknowledgment that appellant was advised that terminating probation would not absolve him of the obligation to disclose his conviction in certain circumstances, and to refrain from possessing or controlling a firearm, in accordance with Penal Code section 1203.4, subdivision (a). The trial court granted the petition in February 2009.

In April 2010, appellant filed a motion to vacate his plea and modify his conviction, on the grounds that a felony conviction for unlawful possession of diazepam was outside the trial court's subject matter jurisdiction, since at most this crime was a misdemeanor. Although the trial court agreed a mistake had been made, it denied the motion on grounds that equitable estoppel barred appellant from vacating his conviction. The trial court commented that appellant had received the benefit of a plea bargain in light of the fact that there was another felony available to the People to prosecute him, possession of Vicodin, which was dismissed as part of the plea. Appellant obtained the requisite certificate of probable cause and appealed the trial court's ruling. (Pen. Code, § 1237.5.)

## DISCUSSION

Appellant asserts a single claim: that the equitable estoppel doctrine has no application to the circumstances of his case. He contends equitable estoppel applies only where a person is looking to receive a benefit that reduces the direct penal consequences of the judgment, for example, a reduced sentence. He argues, however, that he has fulfilled all the requirements of the plea agreement and probation term, and is not asking to reduce the term or otherwise receive some sort of recompense for the error. Instead, he seeks essentially only to eliminate the collateral consequences of the erroneous conviction and plea to a felony, that is, the negatives associated with a felony conviction and the burden of declaring his prior conviction to potential employers and licensing agencies.[2]

Respondent concedes that the plea agreement erroneously stated that diazepam possession was a felony and that appellant's plea to the same was in error.[3] Respondent, however, asserts that appellant is estopped from

---

[2] According to the probation officer's report, in 2005, appellant reported he had never been employed and lived off a trust fund. Appellant declines to note another consequence of his plea to a felony conviction is the fact that it remains available to be pleaded and proved in subsequent prosecutions should appellant choose to engage in further criminal conduct. (Pen. Code, § 1203.4.) We note anecdotally that appellant has not provided any specific examples of instances where he has suffered prejudice or harm resulting from his felony conviction.

[3] Section 11350(a) addresses possession of certain controlled substances that were formerly classified as narcotics, and includes any drug listed in schedule IV, "which is a narcotic drug." Diazepam is listed as a schedule IV drug, but under the heading, "Depressants," which is separate from "Narcotic drugs." (§ 11057, subds. (c) & (d)(9).) Diazepam possession falls under section 11375, which specifies the nature of the offense as either an infraction or a misdemeanor.

Hydrocodone possession is properly a felony under section 11350(a).

modifying his conviction on equitable estoppel grounds.[4] The facts are not in dispute and we review the application of the estoppel doctrine de novo, as a question of law. (See *People v. Panizzon* (1996) 13 Cal.4th 68, 80 [51 Cal.Rptr.2d 851, 913 P.2d 1061].) As noted above, we conclude that for reasons of public policy, appellant is estopped from asserting his claim of error to vacate and modify his conviction.

In *People v. Ellis* (1987) 195 Cal.App.3d 334 [240 Cal.Rptr. 708] (*Ellis*), the defendant admitted as part of her plea bargain that her prior federal bank robbery conviction constituted a "serious felony" for enhancement purposes. The defendant challenged the plea, arguing that case law dictated that federal bank robbery elements did not meet the California "serious felony" elements as a matter of law. The *Ellis* court acknowledged this, concluding that the defendant was admitting a legal falsehood, and that the trial court's act of imposing the serious felony enhancement was in excess of its statutory authority and jurisdiction. (*Id.* at p. 342.) The court also found, however, that estoppel principles could apply where the court acted only in excess of its jurisdiction (as opposed to a complete lack of jurisdiction), by exceeding its statutory authority to accept an erroneous plea agreement. In *Ellis*, the issue was "whether defendant, by her consent to the plea bargain . . . should be estopped from later asserting a claim of error." (*Id.* at p. 343.)[5]

█ *Ellis* outlined the public policy interests at stake in determining whether estoppel should preclude a later claim of error. " 'Whether [a defendant] shall be estopped depends on the importance of the irregularity not only to the parties but to the functioning of the courts and in some instances on other considerations of public policy. A litigant who has

---

[4] Respondent also raises a procedural argument that appellant's claim should be construed as a writ of error *coram nobis* and then denied for failing to meet the requirements of such a writ. We need not address this argument as we conclude appellant's claim is cognizable on appeal. (See *People v. Feyrer* (2010) 48 Cal.4th 426, 433, fn. 5 [106 Cal.Rptr.3d 518, 226 P.3d 998] (*Feyrer*) [finding cognizable an appeal from a denial of a motion to modify a felony conviction to a misdemeanor for a wobbler offense underlying a plea agreement after termination of probation].)

[5] Appellant's briefs confuse the doctrine of "equitable estoppel" with simple "estoppel." The doctrine discussed in *Ellis*, and other cases involving criminal plea agreements in excess of jurisdiction, relates to simple estoppel, which generally provides that a party is barred from taking certain positions contrary to their previous actions, such as consenting to a plea agreement. (See *City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 486 & fn. 21 [81 Cal.Rptr.3d 72].) The focus is on the actions of the party arguing against estoppel, not on the other involved parties. Equitable estoppel, however, generally discussed in the civil context, focuses on knowledge of the parties, intent and reliance. These elements are not part of the analysis in this case, as appellant conceded at argument. (See *People v. Castillo* (2010) 49 Cal.4th 145, 155 & fn. 10 [109 Cal.Rptr.3d 346, 230 P.3d 1132].)

stipulated to a procedure in excess of jurisdiction may be estopped to question it when "[t]o hold otherwise would permit the parties to trifle with the courts." [Citation.] On the other hand waiver of procedural requirements may not be permitted when the allowance of a deviation would lead to confusion in the processing of other cases by other litigants. [Citation.] Substantive rules based on public policy sometimes control the allowance or disallowance of estoppel . . . .' " (*Ellis, supra*, 195 Cal.App.3d at p. 343.)

The *Ellis* court noted the various angles of public policy, commenting, "[t]he law . . . has an interest in insuring that, even where a defendant has committed some criminal act, his criminal conduct matches up with a statute that proscribes the conduct. Only in this way can the judicial system insure that a defendant's criminal conduct will receive the punishment the Legislature intended. . . . [¶] We therefore have no doubt that strong public policy countenances against allowing defendants to plead guilty to crimes they did not commit." (*Ellis, supra*, 195 Cal.App.3d at p. 345.)

On the other hand, "the presence of a plea bargain injects other policy considerations into the calculus. Just as the law has no interest in punishing defendants more severely than has been ordained by the Legislature, the law also has a strong interest in seeing to it that defendants do not unfairly manipulate the system to obtain punishment far less than that called for by the statutes applicable to their conduct." (*Ellis, supra*, 195 Cal.App.3d at p. 345.)

In performing its analysis of whether or not the defendant was estopped, the *Ellis* court noted that the defendant's case was far from the situation where an innocent person is convicted, or where the legal mistake was of a magnitude of unfairness that vacating the plea agreement was the only equitable solution. (*Ellis, supra*, 195 Cal.App.3d at pp. 344, 346.) The court also noted that the defendant received a significant reduction in sentence in that 11 of the 13 counts against her were dropped and her maximum sentence reduced by three years, that the defendant had plausible tactical reasons for admitting the serious felony, and that the record made no indication the prosecution could not have proved all of the charges, implying that the balance of the plea agreement was in favor of the defendant. (*Id.* at pp. 346–347.)

Appellant cites to *People v. Soriano* (1992) 4 Cal.App.4th 781 [6 Cal.Rptr.2d 138] (*Soriano*), where the appellate court found that the public policy concerns noted in *Ellis* were not present for the defendant there and reversed the judgment. (*Soriano, supra*, at p. 786.) The information had

charged Soriano with a violation of Penal Code section 115 for attempting to file a forged instrument, " 'to wit, a death certificate.' " In exchange for a no contest plea, the trial court suspended imposition of sentence and placed Soriano on three years' probation. (*Id.* at p. 783.) The parties agreed Soriano's plea was "defective because a death certificate is not an 'instrument' within the meaning of Penal Code section 115." (*Ibid.*) The court explained, "what we have here is a legal impossibility. Soriano could not have been guilty of violating Penal Code section 115 by attempting to file a forged instrument because, as a matter of law, the writing he was charged with and admitted forging, a death certificate, is not an instrument within the meaning of section 115." (*Id.* at p. 784.)

The *Soriano* court went on to discuss *Ellis* and its legal conclusions: "Whether a defendant who has sought action in excess of the trial court's jurisdiction is estopped to complain of that action depends on various considerations of public policy. [Citation.] . . . [¶] In reaching [its] conclusion, the *Ellis* court considered that defendant's federal felony offense did involve serious, dangerous conduct, and that the record showed plausible tactical reasons for her decision to admit the prior after an initial motion to strike on the very grounds she raised on appeal. [Citation.]" (*Soriano, supra*, 4 Cal.App.4th at pp. 785–786.)

The *Soriano* court, however, found that "[t]here are no similar considerations in this case. Soriano is neither trifling with the courts [citation] nor attempting to have it both ways [citation], nor are there any other public policy considerations favoring estoppel." (*Soriano, supra*, 4 Cal.App.4th at p. 786.) Soriano's conduct did not jeopardize the safety of others. Also, it is important to note that *Ellis*, nor similar cases addressing the estoppel issue in the context of a plea agreement, does not require evidence that one of the parties was "trifling" with the court in order to invoke estoppel. That is simply one of the public policy factors to consider when making an estoppel determination.

Here, unlike in *Soriano*, we conclude public policy considerations akin to those considered by the *Ellis* court dictate appellant be precluded from vacating his plea and modifying his conviction. As noted above, appellant essentially complains of the collateral consequences he must suffer for having a felony conviction—the negatives associated with a felony conviction and the burden of declaring his prior conviction to potential employers and licensing agencies.

Penal Code section 1203.4 governs the discharge of a petitioner after successful completion of a probation term. It does not specify that it applies only to felony convictions or pleas. It provides specific instances where

collateral consequences of a person's conviction remain past the dismissal of his or her accusations. Notably, "in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed." (Pen. Code, § 1203.4, subd. (a)(1).) Additionally, "the order does not relieve [the defendant] of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office, for licensure by any state or local agency, or for contracting with the California State Lottery Commission. [¶] . . . Dismissal of an accusation or information pursuant to this section does not permit a person to own, possess, or have in his or her custody or control any firearm or prevent his or her conviction under [Penal Code former section 12021]."[6] (Pen. Code, § 1203.4, subd. (a)(1), (2).)

To the extent the record indicates, the apparent practical collateral consequences for appellant's retention of a felony conviction are that he remains prohibited from owning or using firearms (Pen. Code, former § 12021), and he must continue to register as a narcotics offender whenever he changes residences for five years after the termination of probation, that is, February 2014.[7] (§§ 11590, 11594.)

Before sentencing, appellant was advised of the collateral consequences of a plea agreement.[8] He and his attorney signed documents acknowledging the same. Appellant's admission his conduct constituted a felony conceded he had engaged in some conduct rising to the level of a felony. (*Ellis, supra,*

---

[6] Penal Code former section 12021 makes it a felony for any person convicted of a felony or any person "addicted to the use of any narcotic drug," to own, purchase, receive, have in his or her possession, custody, or control any firearm. (Eff. Jan. 1, 2012, former § 12021 was repealed and reenacted without substantive change as Pen. Code, § 29800.)

[7] Diazepam possession is not an offense requiring registration under section 11590.

[8] At oral argument, appellant asserted that this court in *People v. Jones* (1989) 210 Cal.App.3d 124 [258 Cal.Rptr. 294] set forth *the* proper procedure for trial courts to follow when the prosecution seeks to impose a potentially unauthorized sentence. In *Jones,* the defendant agreed to plead guilty to four felonies, admit a five-year prior serious felony enhancement and waive his right to appeal. The trial court discussed at length with the defendant the consequences of his plea and, essentially, by waiving his right to appeal, he was giving up his right to challenge on appeal the serious felony enhancement, which the court admitted may not be authorized. His agreement to receive an additional five-year term and waive his right to appeal was in exchange for the plea agreement that took a life term off the table. (*Id.* at p. 130.) Based on the facts of that case, the appellate court concluded that Jones understood the consequences of his plea and had waived his right to challenge the additional five-year sentence. Based on the record in this case, we agree with the trial court that took appellant's plea that he was advised of, and understood, the consequences of his plea and we decline to conclude the trial court here was required to have proceeded in the same manner as the trial court in *Jones.*

195 Cal.App.3d at p. 342.) Unlike the defendant in *Soriano*, appellant's conduct here was serious and jeopardized the safety and well-being of every motorist in his path the day he was arrested. Moreover, the record makes no indication the prosecution would have been unable to prove the remaining felony charge alleged in the complaint, felony possession of 169 pills of Vicodin, or that the sentence imposed for that felony would have been any different from the actual sentence imposed and the lifetime collateral consequences of such a plea and sentence.[9] Like *Ellis*, this case does not involve a situation where an innocent person was convicted or where the legal mistake was so egregious that vacating the plea is the only equitable result.

Appellant also relies on *People v. Velasquez* (1999) 69 Cal.App.4th 503 [81 Cal.Rptr.2d 647] (*Velasquez*). There, the defendant agreed to a prison term of no more than three years for violating Penal Code section 647.6, subdivision (c)(2) (annoying or molesting a child, with a qualifying prior conviction). He was placed on felony probation and sentenced to one year in the county jail. He was advised that if he violated the terms of his probation, he could receive a prison sentence of no more than three years, although the statutory terms for the offense were two, four, or six years. When his probation was later revoked, the trial court sentenced the defendant, over his objection and based on the advice of the prosecutor, to the four-year term, but stayed one year to bring it in accordance with the plea agreement. (*Velasquez, supra*, at p. 505.)

In reversing the trial court, the appellate court explained, "[t]he fair inference is that the prosecutor simply misread the range of punishment for annoying or molesting a child with qualifying prior conviction and erroneously advised appellant of the wrong theoretical maximum sentence." (*Velasquez, supra*, 69 Cal.App.4th at p. 505.) The court went on: "The sentence here imposed is simply not authorized by law even if it is fair under the circumstances. The parties may not enter into a negotiated disposition, either by negligence or design, which specifies a sentence not authorized by law." (*Ibid.*)

---

[9] Moreover, Penal Code section 1192.7, subdivision (a)(2) prohibits plea bargaining in any case where the information charges any offense of driving while under the influence of alcohol, drugs, narcotics, or any other intoxicating substance, or any combination thereof, "unless there is insufficient evidence to prove the people's case, or testimony of a material witness cannot be obtained, or a reduction or dismissal would not result in a substantial change in sentence." Based on the record before us, it may be inferred that the prosecution would have sought out similar punishment to that agreed to even if appellant had gone to trial. (See *Feyrer, supra*, 48 Cal.4th at p. 443, fn. 9.)

The *Velasquez* court rejected the Attorney General's estoppel argument on grounds that the defendant did not "stipulate" to the three-year sentence, but only agreed that he would suffer a sentence of no more than three years if he violated probation. (*Velasquez, supra*, 69 Cal.App.4th at pp. 505–506.) The appellate court found that defendant had not knowingly, intelligently, and expressly agreed to the sentencing irregularity, unlike in other cases relied upon by the Attorney General where the defendants were estopped from complaining. (*Id.* at p. 506.) The court explained, "[the defendant] did not agree or 'stipulate' to any sentencing irregularity to obtain the benefit of a negotiated disposition. The negotiated disposition left open the possibility of a lawful two-year state prison sentence if he violated the terms and conditions of probation. This is simply not a case where the defendant would be estopped because he is 'trifling' with the courts. [Citation.]" (*Id.* at pp. 506–507.)

Here, appellant argues he is not "trifling" with the courts, especially given that he is not asking for a reduction in the sentence, but merely for relief from the collateral consequences by modifying the nature of his offense.

■ The counterargument is one even the *Velasquez* court acknowledges, "[a] defendant may not retain the favorable aspects of his negotiated disposition and at the time jettison its unfavorable aspects. [Citation.] . . . 'Well established is the rule that the People will be held strictly to the terms of a plea bargain with a criminally accused. [Citations.]' [Citation.]" (*Velasquez, supra*, 69 Cal.App.4th at p. 507.)

Here, appellant's sentence fell well within the terms of his plea agreement, which specified a maximum term of three years two months in prison—he received three years' probation instead. Moreover, he stipulated through his plea to a felony. Therefore, the facts and record of this case are much more consistent with *Ellis* than *Soriano* and *Velasquez*.

Finally, as respondent points out, appellant had ample time to challenge or appeal his 2005 plea agreement, but neglected to do so until a year after the 2009 termination of his probation. It appears it was not until appellant, as an ex-felon, was apparently caught in possession of a firearm in Los Angeles County that the circumstances of his original plea warranted his attention. Our conclusion that appellant is estopped by his consent to his plea agreement is " 'in harmony with the proper operation' of the plea bargaining system. [Citation.]" (*People v. Collins* (1996) 45 Cal.App.4th 849, 865 [53 Cal.Rptr.2d 367].)

## **DISPOSITION**

The judgment is affirmed.

Levy, Acting P. J., and Kane, J., concurred.

A petition for a rehearing was denied February 15, 2012, and appellant's petition for review by the Supreme Court was denied April 25, 2012, S200728. Kennard, J., was of the opinion that the petition should be granted.