Filed 12/4/13  P. v. Hackworth CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER D. HACKWORTH,<br><br>      Defendant and Appellant. | A136560<br><br>(San Francisco City and County<br>Super. Ct. No. SC218026) |

For actions related to a domestic dispute, Christopher Hackworth was charged with two counts of assault with a deadly weapon, not a firearm (Pen. Code,[1] § 245, subd. (a)(1)); child endangerment (§ 273a, subd. (a)); and contempt of court for violating a protective or stay-away order (§ 166, subd. (c)(1)).  Pursuant to a negotiated disposition, Hackworth pleaded guilty to one of the counts of assault with a deadly weapon and the other charges were dismissed.  Prior to sentencing, Hackworth moved to withdraw his plea, arguing, inter alia, that he had not been informed that as a felon he would be prohibited from owning or possessing a firearm for the remainder of his life.  The trial court denied Hackworth's motion and sentenced him to three years of probation, conditioned on serving six months in county jail, plus an additional six-month term for violating the terms of his release before sentencing.

Hackworth appeals the denial of his motion to withdraw his plea and asserts the following as errors:  (1) the trial court wrongly determined that the firearms prohibition

---

[1] Unless otherwise indicated, subsequent statutory references are to the Penal Code.

1

was a collateral consequence, rather than a direct consequence, of his plea; (2) even if the court correctly characterized the firearms prohibition, he had demonstrated good cause for withdrawing his plea; and (3) he was prejudiced by ineffective representation of counsel. We find no merit in Hackworth's arguments and affirm the trial court's denial of his motion to withdraw his plea.

## BACKGROUND

On April 28, 2012, Andrew Zahnd, the boyfriend of Hackworth's estranged wife, was sitting in his parked truck with Hackworth's son.[2] Zahnd saw Hackworth standing on a nearby pathway, motioning for Zahnd to approach him while saying "Fuck you!" Hackworth then entered his own vehicle and drove in reverse, closely approaching Zahnd's truck before driving onto the sidewalk and leaving the scene.

On May 7, 2012, the People filed a complaint charging Hackworth with four counts: (1 and 2) assault with a deadly weapon, not a firearm (§ 245, subd. (a)(1)), a felony, with the allegation that the offense was committed while on bail or on his own recognizance (§ 12022.1); (3) child endangerment (§ 273a, subd. (a)), a felony, with the allegation that the offense was committed using a deadly and dangerous weapon (§ 12022, subd. (b)(1)); and (4) contempt of court for violating a protective or stay-away order (§ 166, subd. (c)(1)), a misdemeanor.

On May 10, 2012, pursuant to a negotiated disposition, Hackworth pleaded guilty to one of the assault with a deadly weapon charges and the remaining counts were dismissed. The court issued a domestic violence protective order specifying that Hackworth have no contact with Zahnd, his wife, or his son. Hackworth was notified that as long as he was subject to the protective order, he was prohibited from possessing firearms. Hackworth was also advised that as long as he remained on probation, he would be prohibited from possessing any weapons. Pending sentencing, the court released Hackworth on his own recognizance, with the warning that he would face an

---

[2] The underlying facts of this case are briefly summarized from the probation department's sentencing report.

2

additional six months of incarceration if he violated the terms of release, including the obligation to return to court for sentencing.

On June 25, 2012, Hackworth failed to appear for sentencing and the court issued a bench warrant. On July 2, the court discharged the bench warrant and released Hackworth on his own recognizance pending sentencing.

On July 13, 2012, Hackworth filed a motion to withdraw his plea. He claimed that his plea was not knowing, intelligent, and voluntary because he had not been advised of the following consequences of his plea: (1) loss of voting rights; (2) conviction for a "strike" would attach for life, with no "wash-out period"; (3) loss of his driver's license; (4) prohibition from owning or possessing firearms for life; and (5) conviction for a "strike" would prevent him from retaining his job.[3]

On August 3, 2012, the court denied Hackworth's motion to withdraw his plea and proceeded to sentencing. The court determined that there was no requirement that Hackworth be advised about the consequences of his plea that were listed in his motion, stating: "And it's my determination that the People are correct in their statements to the court, both orally and in the papers, that the issues you've raised are secondary, they're collateral. They are not direct, and therefore, do not give rise to a situation in which I am able to grant your motion." The court sentenced Hackworth to three years of formal probation, conditioned on serving six months in county jail. The court also granted the People's motion for the imposition of an additional six-month sentence as a result of Hackworth's failure to comply with the terms of his previous release, including his failure to comply with the court's stay-away orders with respect to his alleged victims.

Hackworth timely filed a notice of appeal.

## DISCUSSION

### I. *Legal Standard*

A defendant may withdraw his or her plea only upon a showing of good cause supported by clear and convincing evidence. (§ 1018; *People v. Wharton* (1991) 53

---

[3] The prohibition from owning or possessing firearms for life is the only claimed defect in advisement that Hackworth is pursuing in this appeal.

3

Cal.3d 522, 585.) Whether to allow the withdrawal of a plea "rests in the sound discretion of the trial court and a denial may not be disturbed unless the trial court has abused its discretion." (*People v. Francis* (1954) 42 Cal.2d 335, 338; accord, *People v. Castaneda* (1995) 37 Cal.App.4th 1612, 1617.)

When the proposed good cause for withdrawal of a plea involves the failure to fully advise the defendant about the consequences of the plea, the defendant must also show prejudice; i.e., the defendant must show that, if properly advised, he or she would not have entered the plea. (*In re Moser* (1993) 6 Cal.4th 342, 352.)

"When a criminal defendant chooses to plead guilty (or . . . no contest), both the United States Supreme Court and this court have required that the defendant be advised on the record that, by pleading, the defendant forfeits the constitutional rights to a jury trial, to confront and cross-examine the People's witnesses, and to be free from compelled self-incrimination. [Citations.] In addition, this court has required, as a judicially declared rule of state criminal procedure, that a pleading defendant also be advised of the direct consequences of his plea. [Citations.] If the consequence is only collateral, no advisement is required." (*People v. Gurule* (2002) 28 Cal.4th 557, 633-634.) Collateral consequences are sometimes referred to as "secondary" or "indirect." (*People v. Robinson* (1988) 205 Cal.App.3d 280, 282.) "A consequence is considered 'collateral' if it 'does not "inexorably follow" from a conviction of the offense involved in the plea.' " (*People v. Moore* (1998) 69 Cal.App.4th 626, 630 (*Moore*).) "The advice requirement generally extends only to 'penal' consequences [citations], which are 'involved in the criminal case itself' [citation]." (*Ibid.*)

The following have been found to be direct consequences of a plea: "the permissible range of punishment provided by statute" (*Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 605); "the possibility of commitment pursuant to Welfare and Institutions Code, sections 3050, 3051, or 6302" (*ibid.*); "registration requirements, if any" (*ibid.*)—including the fact that a requirement to register as a sex offender will be for the duration of the defendant's life (*People v. Zaidi* (2007) 147 Cal.App.4th 1470, 1481 (*Zaidi*); the possibility of a restitution fine, including its maximum amount (*People v. Villalobos*

4

(2012) 54 Cal.4th 177); "[p]reclusion from probation consideration" (*People v. Caban* (1983) 148 Cal.App.3d 706, 711); the maximum parole period following completion of a prison term (*In re Carabes* (1983) 144 Cal.App.3d 927, 932); and a mandatory revocation of the defendant's driver's license (*People v. Dakin* (1988) 200 Cal.App.3d 1026, 1033).

Collateral consequences of a plea include: "the possibility of increased punishment in the event of a subsequent conviction" (*People v. Crosby* (1992) 3 Cal.App.4th 1352, 1355); the possibility of probation revocation in another case (*People v. Searcie* (1974) 37 Cal.App.3d 204, 211); limits on a defendant's "ability to earn conduct and work credits while incarcerated" (*People v. Barella* (1999) 20 Cal.4th 261, 262-263); and the possibility of future commitment under the Sexually Violent Predator Act (*Moore*, *supra*, 69 Cal.App.4th at pp. 630-631).

## II. *Lifetime Prohibition from Possessing Firearms*

Hackworth maintains that the trial court erred in determing that there was no requirement that he be advised that his plea entailed the lifetime loss of his right to possess a firearm. We must address this issue in order to evaluate Hackworth's argument that he was not effectively represented by counsel.

Federal law prohibits any person who has been convicted of a felony from possessing a firearm or ammunition. (18 U.S.C. § 922(g)(1).) California law also prohibits a convicted felon from possessing a firearm. (§ 29800, subd. (a)(1).) It is beyond dispute that once a defendant pleads guilty to a felony and judgment is entered, the defendant is immediately prohibited from possessing a firearm. The People do not dispute that this is a lifetime consequence under current law.

The question before us is whether a lifetime firearms prohibition is a direct consequence of a defendant's guilty plea to a felony (assuming the defendant has no prior felony conviction) or only a collateral consequence. We find no California case that has

5

examined this question, though a number of cases have referred to the firearms prohibition as a collateral consequence.[4]

Hackworth argues that "a convicted felon's loss of the right to possess a firearm is not contingent upon his post-conviction conduct or any other variable factor" and is a consequence that "follows 'inexorably' from a defendant's plea and ensuing conviction for a felony."

The People contend that the consequence of Hackworth's plea was simply the possible future use of his current conviction in a later criminal proceeding for possession of a firearm. Because the possible future use of a current conviction is not a direct consequence of the conviction (*People v. Gurule*, *supra*, 28 Cal.4th at p. 634), the People argue that the trial court correctly found that a lifetime prohibition from possessing a firearm was a collateral consequence. This is unconvincing because the People's formulation of the consequence of Hackworth's plea ignores the fact that he suffers an immediate consequence—making a criminal act of what would otherwise be the free exercise of a right under the United States Constitution. (U.S. Const., 2nd Amend.; *District of Columbia v. Heller* (2008) 554 U.S. 570, 595.)

While we agree with Hackworth that the firearms prohibition inexorably follows upon a plea of guilty to a felony, it does not fall under the general rule of being a penal consequence that is " 'involved in the criminal case itself.' " (*Moore*, *supra*, 69 Cal.App.4th at p. 630; see *Cody v. United States* (8th Cir. 1972) 460 F.2d 34, 37 ["there is no indication that Congress intended [18 U.S.C. § 922] to be a punitive, rather than a regulatory, measure"].)

Hackworth relies primarily on *Zaidi*, in which the defendant agreed to plead no contest to a misdemeanor count of lewd conduct in a public place (§ 647, subd. (a)) in exchange for the dismissal of more serious counts. (*Zaidi*, *supra*, 147 Cal.App.4th at p.

---

[4] See *People v. Ziegler* (2012) 211 Cal.App.4th 638, 651, quoting *People v. Ansell* (2001) 25 Cal.4th 868, 872-873; *People v. Miller* (2012) 202 Cal.App.4th 1450, 1458-1459; *People v. Smith* (2003) 110 Cal.App.4th 1072, 1080, quoting *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 593 (dis. opn. of Kennard, J.)

1474.)  The court asked the defendant, " 'Do you understand that the Court could also order you register as a sexual offender pursuant to . . . section 290 if the Probation Department determines that is appropriate?' " (*Id.* at p. 1476.)  The defendant answered in the affirmative.  (*Ibid.*)  At sentencing the court imposed the registration requirement.  (*Id.* at p. 1477.)  The defendant later moved to withdraw his plea, arguing that the plea was not knowing and intelligent because he had not been informed that registration was a lifetime requirement and not simply for his term of probation.  (*Id.* at pp. 1479-1480.)  The trial court denied the defendant's motion.  (*Id.* at p. 1480.)

The *Zaidi* court noted prior cases holding that the court had a duty to advise of the requirement to register as a sex offender and that failure to so advise was error.  (*Zaidi*, *supra*, 147 Cal.App.4th at p. 1481.)  The issue before the court was the "requisite content of the advisement regarding sex registration as a direct consequence of a plea."  (*Ibid.*)  The court concluded that a trial court "must advise that the registration requirement will be for the duration of the defendant's life."  (*Ibid.*)  In reaching that determination, the court commented that "the duty [to advise about the registration requirement] exists because the ignominy and the duration of the registration requirement make it a particularly harsh sanction, and only if a defendant is apprised of the duration can he or she fully appreciate the gravity of the consequence of the plea, so as to make the plea voluntary and intelligent."  (*Id.* at p. 1482.)

Hackworth's reliance on *Zaidi* is misplaced.  Unlike the firearms prohibition at issue here, the *Zaidi* court was dealing with a duty of advisement that was already well established.  The question in *Zaidi* was not whether there was a duty of advisement, but whether the fact that sex offender registration was a lifetime requirement must be included in the advisement.  Although the registration requirement, like the firearms prohibition, is not penal (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1197), the firearms prohibition lacks the important element of "ignominy" that qualifies the registration requirement as an exception to the general rule that direct consequences are limited to penal consequences.

Despite the fact that the firearms prohibition is of long standing, Hackworth points to no case in any jurisdiction that has held the prohibition to be a direct consequence of a felony conviction, instead of a collateral consequence.[5]  Because Hackworth has provided no convincing argument or authority for us to exempt the firearms prohibition from the general rule that direct consequences are limited to penal consequences involved in the criminal case itself, we reject Hackworth's contention that the court erred by finding the firearms prohibition to be a collateral consequence.

**III.** *Prejudice*

Because the trial court found that Hackworth had failed to show good cause to withdraw his plea, it did not reach the question of whether Hackworth would have entered his plea had he been advised of the firearms prohibition.  However, the record provides no basis upon which the court could have found that Hackworth had shown prejudice.

Hackworth's motion to withdraw his plea stated:  ". . . Hackworth, through counsel, has stated under oath in his declaration that he would not have entered into the plea bargain had he known of the . . . consequences of his plea."  This passage misrepresents Hackworth's declaration through counsel, which states the consequences of his plea for which he received no advisement, but makes no statement that had he been advised, he would not have entered his plea.  When given an opportunity to address the court at the hearing in which his motion was considered, Hackworth again made no statement that, had he been advised of the consequences that were the subject of his motion, he would not have entered his plea.

---

[5]  This court's own research from other jurisdictions has disclosed only cases holding that the firearms prohibition is a collateral consequence to a conviction, or referring to it as such.  (See, e.g., *United States v. Bethurum* (5th Cir. 2003) 343 F.3d 712, 718; *United States v. Amerson* (8th Cir. 2010) 599 F.3d 854, 855-856); *United States v. Anderson* (S.D.Cal. Oct. 15, 2013, No. 85-CR-252-LAB) 2013 WL 5658828); *State v. Rodriguez* (Minn.App. 1999) 590 N.W.2d 823, 825 [finding the firearms prohibition to be collateral and discussing authority from other states].)

The court lacked not only an avowal from Hackworth that he would not have entered his plea had he been advised of the firearms prohibition, but also reasons to have accepted such an avowal, had it been made. Hackworth's motion contains the assertion that he owned a firearm when he entered his plea, but no additional information was provided to the court that would support a finding that firearm ownership was so important to Hackworth that he would hazard the uncertain result of trial rather than accept the plea agreement. (See *People v. McClellan* (1993) 6 Cal.4th 367, 378 [noting that "the record of the trial court proceedings contains no evidence (nor even an assertion) concerning the bearing of a registration requirement upon defendant's decision to plead guilty"].)

Hackworth asserts that "his attempt to withdraw his plea prior to the imposition of sentence . . . establishes requisite prejudice." We find no support for this proposition, which would obviate any need for a defendant to make an affirmative showing of prejudice for a failure in advisement. Hackworth's reliance on *Zaidi*, *supra*, 147 Cal.App.4th at pages 1488-1489, is misplaced. In addition to the *Zaidi* defendant's objection at sentencing and subsequent motion to withdraw his plea, the motion to withdraw was supported by a declaration that directly asserted prejudice—a factor that is missing in this case. (*Ibid.*)

Accordingly, even if Hackworth had shown good cause, we would have to affirm the trial court's denial of his motion because he failed to demonstrate prejudice.

**IV.** *Good Cause*

Hackworth also contends that if, as we have determined, the firearms prohibition is a collateral consequence of his plea, he nonetheless made a showing of good cause to withdraw his plea based on the "misadvice" he received.

We need not reach this argument because of our determination that Hackworth failed to demonstrate prejudice. We note, however, that Hackworth's motion to withdraw his plea provided only two grounds upon which he based his argument for good cause: (1) that his plea was not knowing and voluntary because he had not been informed of all the direct consequences of the plea and (2) ineffective assistance of counsel.

9

Hackworth seems now to propose a different ground upon which the trial court might have found good cause, but it was not a ground presented to the court, so we can find no abuse of discretion in the court's failing to consider it.

## V. *Ineffective Assistance*

Hackworth argues that because of ineffective assistance of counsel he was prejudiced in that (1) he entered his plea without a full understanding of its consequences because he failed to receive proper advisements and (2) his motion to withdraw his plea failed to state the ground that a term of the plea agreement could not be fulfilled.

Hackworth must show both that his counsel performed deficiently "under an objective standard of professional reasonableness" and that he was prejudiced by the result. (*People v. Waidla* (2000) 22 Cal.4th 690, 718.) Hackworth fails to make a showing of deficient performance in both of his attempts to demonstrate ineffective assistance.

Hackworth's first argument for ineffective assistance of counsel fails because he makes no attempt to explain why his counsel's failure to advise him concerning collateral consequences was deficient under an objective standard of professional reasonableness. This is not a self-evident proposition and Hackworth provides no reasoning or authority that would justify our reaching that conclusion. He simply states that the record fails to show that his plea was knowing and voluntary, a conclusion we must reject because Hackworth *was* advised concerning the direct consequences of his plea.

Hackworth's second argument for ineffective assistance concerns a prohibition from possessing weapons as a condition of probation. The People informed the trial court that Hackworth's negotiated disposition included a weapons prohibition while on probation. The court asked Hackworth if he understood this, and he responded in the affirmative. Hackworth argues that he could have reasonably understood that all weapons restrictions, including those concerning firearms, would be lifted at the end of his term of probation. Accordingly, he continues, had his counsel included as a ground for withdrawing his plea that an element of the plea agreement could not be fulfilled, the trial court would have had no choice but to grant his motion, because ambiguities

10

concerning the parties' intentions in regard to a negotiated plea must be construed in the defendant's favor (*People v. Toscano* (2004) 124 Cal.App.4th 340, 345) and the defendant is entitled to every reasonable doubt concerning interpretation of a plea agreement (*People v. Daugherty* (1981) 123 Cal.App.3d 314, 319).

A trial judge may not impose judgment contrary to the terms of a plea bargain "without affording the defendant an opportunity to withdraw his guilty plea." (*People v. Delles* (1968) 69 Cal.2d 906, 910.) A trial court should not ratify a promise in a plea agreement that ignores statutory requirements and may be illusory. (*People v. Meals* (1975) 49 Cal.App.3d 702, 708.) Here, Hackworth claims that the requirement that he possess no weapons during probation contained, as he could reasonably understand it, a promise that after probation there would be no restriction on his possession of weapons, and that promise was illusory because it could not be fulfilled.

We cannot accept Hackworth's reasoning. Conditions of probation provide the probationer with notice of what will (and, by exclusion, what will not) form the basis of a charge that the probationer has violated probation. Under the terms of his plea agreement, Hackworth agreed that it would be a violation of his probation to possess a weapon and he does not now argue that this was not his understanding. The only implied promise was that possession of a weapon after his probation ended would not constitute a violation of the conditions of his probation. That promise is not illusory. Possession of a firearm, or any other weapon, after Hackworth is no longer on probation cannot be prosecuted as a probation violation.

We conclude that Hackworth's plea agreement and his conditions of probation cannot be reasonably interpreted to contain an implied promise that there would be no independent legal impediment to the possession of a firearm after Hackworth was no longer on probation. Because Hackworth's understanding of an implied promise in his plea agreement was not reasonable, it was not ineffective assistance of counsel for his counsel to fail to make that argument.

11

**DISPOSITION**

The court's order denying Hackworth's motion to withdraw his plea is affirmed.

_____
Brick, J.*

We concur:

_____
Haerle, Acting P.J.

_____
Richman, J.

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.