Filed 8/29/24  P. v. Allen CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>PAMELA MARIA ALLEN,<br><br>       Defendant and Appellant. | A167971<br><br>(San Mateo County<br>Super. Ct. No. SC035484A) |

**MEMORANDUM OPINION[1]**

In 1994, defendant Pamela Maria Allen stabbed her sister and shot two men for no apparent reason.  (*People v. Allen* (Feb. 7, 2005, A105804) [nonpub. opn.] (*Allen I*) at *2.)[2]  She was subsequently diagnosed with paranoid schizoaffective disorder.  (*People v. Allen* (Jan. 24, 2022, A162774) [nonpub. opn.] (*Allen II*) at *2; *Allen I, supra,* A105804, at *2.)

---

[1]  This appeal is appropriately resolved by memorandum opinion in accordance with California Standards of Judicial Administration, section 8.1.

[2]  We take judicial notice on our own motion of our prior opinions in defendant's appeals from orders extending her commitment to the Department of State Hospitals.  (Evid. Code, §§ 452, subd. (a), 459.)

The following year, defendant entered into a negotiated disposition to resolve the charges against her—two counts of attempted first degree murder, two counts of assault with a firearm, and three counts of assault with a deadly weapon. She pleaded nolo contendere to two counts of assault with a firearm and two counts of assault with a deadly weapon. The remaining counts were dismissed. The trial court then found her not guilty by reason of insanity (NGI) and committed her to the Department of State Hospitals for the agreed-upon maximum of 13 years 4 months, with 209 days of custody credit.

Defendant was housed in the most restrictive unit. (*Allen II, supra,* A162774, at \*2; *Allen I, supra*, A105804, at \*2.) She verbally threatened and physically assaulted staff and patients, behaved in a sexually inappropriate manner, refused medication, and violated rules. (*Allen II, supra*, A162774, at \*3.) The trial court has five times extended her commitment, finding her "still a danger" and she "cannot be successfully treated in the community." (*Id.*, at \*5.)

In February 2023, 28 years after entering into the negotiated disposition that resolved the criminal charges against her, defendant filed a motion to withdraw her nolo contendere plea, arguing it was not authorized under the plea statute, specifically Penal Code section 1016 as elucidated in *People v. John* (2019) 36 Cal.App.5th 168 (*John*). The trial court denied the motion.

## DISCUSSION

Making an amalgam of forfeiture and estoppel arguments, the Attorney General maintains defendant has waited too long to challenge the validity of her plea. We agree, concluding defendant is estopped

from seeking to withdraw her plea and overturning the negotiated disposition to which she agreed nearly three decades ago.

Indeed, one of the cases defendant includes in her opening brief—acknowledging that "[i]n the absence of exceptional circumstances, a party has no right to attack a voidable judgment long after it is final" (*People v. Ramirez* (2008) 159 Cal.App.4th 1412 (*Ramirez*))—illustrates why estoppel should bar her belated attack on her plea.

In *Ramirez,* the defendant entered into a plea agreement to resolve numerous pending charges. In accordance therewith, the trial court imposed, but suspended execution of, a midterm, four-year sentence and placed him on probation. (*Ramirez, supra,* 159 Cal.App.4th at p. 1418.) After violating probation a second time, the defendant entered into a second negotiated disposition to resolve the probation matter. This disposition included increasing the suspended sentence to the upper term of five years. (*Id.* at pp. 1419–1420.) After a third violation, the trial court revoked probation and imposed the upper term sentence. (*Id.* at p. 1419.)

The Court of Appeal rejected the defendant's argument that the trial court lacked "jurisdiction" to extend the sentence and therefore he could challenge it at any time. The appellate court explained:

> " '[J]urisdictional errors are of two types. "Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." [Citation.]' [Citation.] The term 'lack of jurisdiction' may also be applied when the court possesses jurisdiction over the subject matter and parties in the fundamental sense but ' "has no 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." [Citation.]' [Citation.] 'When a

3

court lacks jurisdiction in a fundamental sense, an ensuing judgment is *void*, and "thus vulnerable to direct or collateral attack at any time." [Citation.]' [Citation.] By contrast, when a court has fundamental jurisdiction to act but acts in excess of jurisdiction, its actions are merely *voidable*, '[t]hat is, its act or judgment is valid until it is set aside, and a party may be precluded from setting it aside by "principles of estoppel, disfavor of collateral attack or res judicata." [Citation.]' [Citation.] Whereas a lack of fundamental jurisdiction may be raised at any time, a challenge to a ruling in excess of jurisdiction is subject to forfeiture if not timely asserted. [Citation.] In the absence of exceptional circumstances, a party has no right to attack a voidable judgment long after it is final." (*Ramirez, supra,* 159 Cal.App.4th at p. 1422.)

The court went on to conclude that while the trial court lacked "authority" to increase the defendant's sentence (*Ramirez, supra,* 159 Cal.App.4th at p. 1425), it did not lack "fundamental jurisdiction" to do so. "[B]y failing to heed the statute that precluded it from modifying appellant's sentence ([Pen. Code,] § 1203.2, subd. (c)), the court merely exceeded its jurisdiction but did not lack jurisdiction in the fundamental sense over appellant or the subject matter." (*Id.* at p. 1427.)

The appellate court further concluded the defendant not only "forfeited" his challenge to the extension of his sentence by failing to file a timely appeal, but he also was "estopped" from challenging the order because he "agreed to the five-year sentence as part of a plea deal in which he admitted the probation violation." (*Ramirez, supra,* 159 Cal.App.4th at pp. 1427–1428.)

With respect to the latter point, the *Ramirez* court explained, "The rationale justifying application of estoppel is that 'defendants who have received the benefit of their bargain should not be allowed to trifle

4

with the courts by attempting to better the bargain through the appellate process.' (*People v. Hester* (2000) 22 Cal.4th 290, 295.)  In exchange for agreeing to increase his suspended sentence by one year, appellant received the benefit of being reinstated on probation and released from custody.  Having accepted the benefits of his plea, he should not now be able to better the bargain by scaling back the increased sentence that was a fundamental component of the plea deal. [¶] Whether a defendant is estopped to complain about an act in excess of jurisdiction 'depends on the importance of the irregularity not only to the parties but to the functioning of the courts and in some instances on other considerations of public policy.' [Citation.]  We discern no public policy that would be served by allowing appellant to challenge his sentence after he had already enjoyed the benefits of the plea bargain giving rise to his sentence." (*Ramirez, supra,* 159 Cal.App.4th at p. 1428; see also *People v. Miller* (2012) 202 Cal.App.4th 1450, 1452–1453 [the defendant, who entered into negotiated disposition in 2005 but made no objection to his plea and conviction until April 2010, was estopped from seeking to withdraw his plea; "[a]lthough . . . there was error in charging and accepting the plea . . . , for reasons of public policy," the defendant was "estopped from vacating his plea and modifying his conviction by his consent to the plea agreement"]; *People v. Couch* (1996) 48 Cal.App.4th 1053, 1057 ["that a defendant has received a benefit in return for agreeing to accept a specified sentence is itself sufficient to estop that defendant from later seeking to unfairly supplement this benefit by mounting an appellate attack on the trial court's imposition of the specific sentence which the defendant agreed to accept"]; *People v. Superior Court* (*Wagner*) (1989) 210 Cal.App.3d

1146, 1149 [holding in habeas appeal the "defendant waived the defect in his 1983 NGI plea by his unexcused delay in challenging that plea until he reaped the full benefit of preferable hospital confinement and avoided the possibility of prison and attendant parole period"].)

The reasoning of these cases is apposite here. There is no question the trial court had personal jurisdiction over defendant and had subject matter jurisdiction to hear the criminal case against her. Accordingly, the court had fundamental jurisdiction to accept her plea and impose the commitment order defendant now seeks to collaterally challenge, regardless of whether her plea was statutorily authorized. (See *People v. Hester, supra,* 22 Cal.4th at p. 295 (*Hester*) [where a defendant has "pleaded guilty in return for a *specified* sentence, appellate courts will not find error even though the trial court acted in excess of jurisdiction in reaching that figure, so long as the trial court did not lack *fundamental* jurisdiction"].)

There is also no question the trial court accepted defendant's plea and ordered her commitment pursuant to a negotiated disposition which secured a significant benefit for her—psychiatric treatment, instead of incarceration in a state prison. (See *Wagner, supra,* 210 Cal.App.3d at p. 1149.)

To quote *Ramirez*, "[w]e discern no public policy that would be served" by allowing defendant to withdraw her plea and overturn the negotiated disposition long after she has "already enjoyed the benefits of the plea bargain." (*Ramirez, supra,* 159 Cal.App.4th at p. 1428.)

Defendant urges that *People v. Prudholme* (2023) 14 Cal.5th 961 (*Prudholme*) and *John, supra,* 36 Cal.App.5th 168, sanction her effort

6

to invalidate the negotiated disposition to which she agreed nearly 30 years ago.  Neither case does so.

In *Prudholme,* the trial court, pursuant to a negotiated disposition, imposed a three-year probationary period.  (*Prudholme*, *supra*, 14 Cal.5th at p. 964.)  The defendant timely appealed, and while his appeal was pending, the Legislature enacted Assembly Bill No. 1950 (2019–2020 Reg. Sess.), which reduced most felony probation to two years.  (*Prudholme*, at p. 966.)  The issue before our Supreme Court was whether this ameliorative legislation applied retroactively to nonfinal cases.  The court held that it did and modified the judgment to reduce the probationary period to two years.  (*Id.* at pp. 979–980.)  Thus, *Prudholme* involved an entirely different procedural posture—a timely, direct appeal from a negotiated disposition.  It does not remotely call into question the high court's decision in *Hester* and other estoppel cases.

In *John,* the defendant moved to withdraw her guilty plea less than five months after the trial court, in accordance with a negotiated disposition, ordered her committed to a state hospital.  (*John*, *supra*, 36 Cal.App.5th at p. 171.)  The trial court ruled her motion was untimely.  On appeal, the Attorney General conceded the trial court was in error.  (*Ibid.*)  The Court of Appeal not only agreed the defendant's appeal was timely but went on to conclude the plea deal did not comport with the statutes governing guilty pleas.  (*Id.* at pp. 174–175.)  It further concluded the appropriate disposition was to reverse and remand, allowing the defendant to enter a new plea.  (*Id.* at p. 176.)  Not surprisingly, given the relatively short period that elapsed before the defendant sought to withdraw her guilty plea, the Attorney

7

General did not raise the issue of estoppel, nor did the appellate court consider it.

In sum, given the nearly 30 years that have elapsed since defendant's nolo contendere plea to the serious charges against her, she is estopped from seeking to withdraw her plea and overturning the negotiated disposition to which she agreed.

## DISPOSITION

The order denying defendant's motion to withdraw her plea is AFFIRMED.

BANKE, J.

WE CONCUR:

HUMES, P. J.

LANGHORNE WILSON, J.

(*People v. Allen*; A167971)

8